IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 7 |
| ROBERT K. MIELL, ) | |
| ) | |
| Debtor. ) | Bankruptcy No. 09-01500 |
| -------------------------------------------------- | |
| UNITED STATES TRUSTEE, ) | |
| ) | Adversary No. 10-09003 |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| ROBERT MIELL, ) | |
| ) | |
| Defendant. ) | |

**ORDER RE: COMPLAINT TO DENY DISCHARGE**

This matter came before the undersigned for trial on October 26, 2010. Assistant U.S. Trustee Janet Reasoner appeared for Plaintiff. Debtor/Defendant Robert Miell did not appear, nor did anyone appear on his behalf. After the presentation of evidence and argument, the Court took the matter under advisement. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J).

**STATEMENT OF THE CASE**

U.S. Trustee seeks denial of discharge for Debtor's false oath and concealment, transfer or undervaluation of assets with the intent to defraud creditors and the Trustee. The complaint alleges Debtor failed to disclose substantial personal property, including artwork, antiques, jewelry and collectibles, on his schedules and when questioned at the meeting of creditors. Debtor contends he did not conceal or transfer property and all his property interests were apparent to Trustee. He asserts any failure to list property on schedules was not intentional.

## FINDINGS OF FACT

Debtor filed a voluntary Chapter 11 petition, without Schedules and Statements, on May 28, 2009. His Schedules and Statements were filed June 29, 2009, consisting of 461 pages (Doc. 177), and amended on July 13, 2009. U.S. Trustee replicates relevant portions of the Schedules and Statements in Exhibits 1 and 2. The Court converted the case to Chapter 7 and appointed a Chapter 7 Trustee on October 9, 2009.

At the time Debtor filed his Schedules, he was detained in the Hamilton County Jail, and has been incarcerated continuously since then. The U.S. District Court, Northern District of Iowa, entered the final sentencing Order in Case No. 07-00101-MWB, United States v. Miell, on September 27, 2010 (Doc. 311) for Counts including mail fraud charges from an insurance fraud scheme, mail fraud charges from a damage deposit fraud scheme, perjury charges, and charges of filing a false tax return. The Court sentenced Debtor to a total of 240 months of imprisonment, describing Debtor as "a serial fraudster and perjurer." United States. v. Miell, No. 07-cr-00101, Doc. 311, slip op. at 95 (N.D. Iowa Sep. 27, 2010). On October 4, 2010, the Court also ordered Debtor to pay restitution of more than $630,000. United States. v. Miell, No. 07-cr-00101, Doc. 315, slip op. at 16 (N.D. Iowa Oct. 4, 2010).

The District Court noted the inconsistencies between Debtor's bankruptcy schedules and a Personal Financial Statement Debtor submitted to the probation office on March 17, 2009. Id., Doc. 311, slip op. at 11, 79. The statement he gave to Probation showed a net worth of $36,285,925. Id. at 11. Debtor's Amended Summary of Schedules filed July 13, 2009 shows a net worth of $13,334,730.60. Debtor stated to the District Court that his bankruptcy filings accurately reflected his financial status. The District Court's sentencing order states: "The discrepancy [between the financial statement and the bankruptcy schedules] suggests that Miell is still not being completely honest with either this court or the bankruptcy court about his assets."

In Schedule B, Debtor lists personal property with values totaling $58,800. This includes nine vehicles with a total value of $16,300, a ring Debtor values at $15,000, clothing of $1500, and cash on hand of $900. The remainder of $25,100

2

includes household goods and furnishings, tools and decorations. At line 5 of Schedule B, Debtor marked "None" under the heading "Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles." At the § 341 meeting of creditors, Debtor stated that his schedules disclose a complete listing of all of his assets.

In stark contrast, U.S. Trustee's Exhibit 7 includes 91 single-spaced pages of items and groups of items from 10 separate auctions of personal property conducted for the estate. The 10 auctions grossed $214,826.20, with $158,309.51 recovered for the bankruptcy estate. The vehicles and the diamond ring have not yet been sold. Thus, personal property with an auction value of $215,000 was not included in Debtor's Schedule B personal property which he valued at approximately $25,100, exclusive of vehicles, the ring, clothing and cash on hand.

U.S. Trustee points out, and the exhibits make evident, that Debtor did not disclose valuable artwork, antiques, Hummel and Lladro collections, Beatles memorabilia, Iowa Hawkeye memorabilia, and Christmas and Halloween décor. As an example, the 392 separate Beatles and Hawkeye items were sold in Auction Number 4 which brought a total of $37,586.60. The 451 items sold in Auction Number 2, which appears to include the Christmas and Halloween decorations, brought a total of $11,436.50.

## CONCLUSIONS OF LAW

U.S. Trustee's objections are governed by 11 U.S.C. § 727(a), which states in pertinent part:

(a) The court shall grant the debtor a discharge, unless –

. . .

(2) the debtor, with intent to hinder, delay or defraud . . . has transferred . . . or concealed, or permitted to be transferred . . . or concealed –

(A) property of the debtor, within one year before the date of the filing of the petition;

3

. . .

    (4) the debtor knowingly and fraudulently, in or in connection with the case –

    (A) made a false oath or account.

"Because denial of discharge is a 'harsh and drastic penalty,' § 727 is 'strictly construed in favor of the debtor,' though its purpose remains to prevent abuse of the bankruptcy process." In re Smith, 373 B.R. 895, 900 (Bankr. N.D. Iowa 2007) (quoting In re Korte, 262 B.R. 464, 471 (B.A.P. 8th Cir. 2001)).

## FRAUDULENT TRANSFER OR CONCEALMENT OF PROPERTY

To support denial of discharge under § 727(a)(2), U.S. Trustee must prove by a preponderance of the evidence that "(1) the act complained of was done within one year prior to the date of petition filing; (2) the act was that of the debtor; (3) it consisted of a transfer, removal, destruction or concealment of the debtor's property; and (4) it was done with an intent to hinder, delay, or defraud either a creditor or an officer of the estate." Korte, 262 B.R. at 472; In re Sandiford, 394 B.R. 487, 490 (B.A.P. 8th Cir. 2008). Fraudulent intent can be inferred from the facts and circumstances surrounding the debtor's conduct. Korte, 262 B.R. at 473.

This section can apply when a debtor fails to disclose assets in bankruptcy schedules. See Smith, 373 B.R. at 900. Schedules must be completed properly, and not in a way that requires the Court to "dig[ ] out and conduct[ ] independent examinations to get the facts." Mertz v. Rott, 955 F.2d 596, 598 (8th Cir.1992) (considering "false oath" denial of discharge). Courts have noted that § 727(a)(2) seeks to protect the rights of unsecured creditors. In re Jeffries, 378 B.R. 248, 253 (Bankr. W.D. Mo. 2007) (citing cases). As Debtor points out in his Answer, the court in Jeffries decided that the debtor's destruction or misuse of fully-encumbered property, i.e. property with no equity, does not warrant denying him a general discharge under § 727(a)(2) because the loss of that property does not harm unsecured creditors. Id.

4

## FALSE OATH

To establish that Debtor made a false oath under § 727(a)(4)(A), U.S. Trustee must prove by a preponderance of the evidence that: "(1) Debtor made a statement under oath; (2) the statement was false; (3) Debtor knew the statement was false; (4) Debtor made the statement with fraudulent intent; and (5) the statement related materially to Debtor's bankruptcy case."  In re Juehring, 332 B.R. 587, 591 (Bankr. N.D. Iowa 2005) (denying the discharge of one joint debtor).  Section 727(a)(4)(A) makes clear that the Bankruptcy Code requires nothing less than a full and complete disclosure of any and all property interests of any kind.  Korte, 262 B.R. at 474; In re Tripp, 224 B.R. 95-98 (Bankr. N.D. Iowa 1998).  The omission of even a relatively modest asset is material, if the omission was fraudulent and knowing.  Mertz, 955 F.2d at 598.

Statements made by a debtor in the bankruptcy petition and during the meeting of creditors are made under oath.  In re Rohde, 400 B.R. 230, 235 (Bankr. N.D. Iowa 2009).  The question of a debtor's knowledge and intent under § 727(a)(4) is an issue of fact.  In re Sears, 246 B.R. 341, 347 (B.A.P. 8th Cir. 2000) (citing In re Olson, 916 F.2d 481, 484 (8th Cir. 1990)).  "Intent under § 727 can be established by circumstantial evidence.  Statements made with reckless indifference to the truth are regarded as intentionally false."  In re Bauder, 333 B.R. 828, 830 (B.A.P. 8th Cir. 2005).  As a debtor is unlikely to admit to fraudulent intent, the debtor's course of conduct and other surrounding circumstances may be considered.  In re Gehl, 325 B.R. 269, 277 (Bankr. N.D. Iowa 2005).

This Court has denied discharge under both §§ 727(a)(2) and (a)(4)(A) where a debtor failed to disclose thousands of dollars of payments to creditors, gifts and personal assets.  In re Ovel, 2008 WL 5111340, at *5-6 (Bankr. N.D. Iowa 2008).  Another court noted that § 727(a)(4)(A) is more directly applicable to similar facts in In re Bieniek, 417 B.R. 133, 138 (Bankr. D. Minn. 2009).  In that case the debtors attempted to conceal various property interests by failing to disclose them on schedules and the meeting of creditors, "until the assets were subsequently, and independently, investigated and confirmed."  Id. at 137.

## ANALYSIS

5

U.S. Trustee asserts Debtor's discharge should be denied based on concealment of assets, § 727(a)(2), and false oath, § 727(a)(4)(A). Section 727(a)(4)(A) is more directly applicable to this case. Having reviewed the record and the surrounding circumstances, the Court concludes that Debtor made false oaths, with the intent of defrauding his creditors, by failing to fully disclose all his personal property on his bankruptcy schedules and at the meeting of creditors. Debtor signed his bankruptcy schedules under oath and testified at the meeting of creditors under oath. His schedules did not disclose the full extent of his assets. Debtor knew he was not disclosing all his assets and the failure to disclose more than $200,000 worth of personal property is material to his case.

The Court does not believe Debtor's assertions in his Answer that he just didn't remember all of the personal property he owned because he was in jail when he filled out his schedules. Much of the property of value included in the auctions was on display in Debtor's own home, as evidenced by the many photographs U.S. Trustee included in the exhibits. Debtor had to have known that the property had substantial value.

Even if Debtor thought all his personal property was subject to liens, and even though his belongings were apparent to Trustee with investigation, Debtor still had a duty to disclose all assets in his Schedules. Instead, Trustee was essentially made to conduct a treasure hunt to find all of Debtor's belongings, not only in his home but also in various storage places. Furthermore, close to the same time Debtor filled out his bankruptcy schedules, he presented a Personal Financial Statement to the U.S. District Court probation office with obvious inconsistencies. The Court can easily conclude that Debtor understated and undervalued his assets in an attempt to keep them from the reach of his creditors, and from the victims of the fraud for which he was indicted in U.S. District Court.

One exchange from the meeting of creditors on July 1, 2009 is illustrative of Debtor's false statements. See Ex. 3, p. 57. At this point, Debtor was a Debtor-in-Possession under Chapter 11 and no Trustee was yet appointed. When asked by the Assistant U.S. Trustee to describe "decorations" worth $1,000 as listed on Schedule B, Debtor stated:

> Knick-knacks and things like that.
> . . .

> They would be just a lot of things like a business called Stuff Etc. might sell or things that people would leave at varying houses – that would be there for decoration-type things.
> . . .
> It would be displayed. It would be in a space or on a shelf or just a plate on a holder, glasses, figurines too. Any kind of thing like that that would basically – you buy unique glassware or somebody gives it to you or they leave it and then you take – you go to a flower place and get artificial flowers. It looks nice, but it isn't something anybody else can't buy for ten dollars and put together the same way.

Ex. 3, p. 57 lines 6-24. This is the description Debtor gave for the myriad of collectibles he owned which were ultimately liquidated at auction for a total of almost $215,000.

Debtor was obviously being disingenuous about the value of this personal property at a time when he was acting as a Chapter 11 Debtor-in-Possession, bound by the duties of trustees. On the basis of this testimony under oath, had a Trustee never been appointed, all of Debtor's "decorations" would be presumed to have little or no value for creditors. Debtor's mendacity is not excused simply because a Trustee, subsequently appointed by the Court, discovered the extent of Debtor's assets and recovered them for the benefit of creditors.

In summary, U.S. Trustee has proved by a preponderance of the evidence that Debtor knowingly and fraudulently, in connection with his bankruptcy case, made a false oath. Discharge should be denied under § 727(a)(4)(A).

**WHEREFORE**, the Complaint to Deny Discharge is GRANTED.

**FURTHER**, Debtor's discharge is denied under § 727(a)(4)(A) for false oath.

Dated and Entered:
November 10, 2010

_____
PAUL J. KILBURG
U.S. BANKRUPTCY JUDGE

7